MARK S. POSARD  (SBN:  208790)
mposard@grsm.com
Jennifer M. Holly  (SBN:  263705)
jholly@grsm.com
Heather T. Daiza  (SBN:  323272)
hdaiza@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071
Telephone:  (213) 576 5000
Facsimile:  (213) 680-4470

Attorneys for Defendants, NATIONAL EWP, INC.,
SIMON JOHNSON, and KEVIN SIMPSON

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL MARTINEZ, an individual, and JUAN SÁNCHEZ, an individual, on behalf of themselves,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL EWP, INC., a Nevada corporation, SIMON JOHNSON, an individual, KEVIN SIMPSON, an individual, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. **'23CV0835 JM   WVG**<br><br>**DEFENDANTS' NOTICE OF MOTION FOR REMOVAL OF ENTIRE ACTION**<br><br><br><br>Complaint Filed in Imperial County ECU002809<br>Superior Court on 03/10/2023 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT,**

**SOUTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendants National EWP, Inc., Simon Johnson, and Kevin Simpson, ("Defendants"), hereby remove the state court action captioned *Michael Martinez, et al. v. National EWP, Inc., et al.*, Case No. ECU002809, Superior Court of the State of California, County of Imperial (the "Action"), to this Court pursuant to 28 United States Code sections 1332, 1441(a) and (b) and 1446.   This Notice of Removal is being filed without prejudice to the objections and defenses of Defendants.   Removal of this action

-1-

on the basis of diversity jurisdiction is proper for the following reasons:

## TIMELINESS

1.    On March 10, 2023, Plaintiffs filed this Complaint. Defendants were served with a Summons and Complaint from the state court and a copy of the Complaint in this action on April 7, 2023. *See* concurrently filed Declaration of Jennifer Holly, ¶ 2.  This removal therefore is timely.  *See* 28 U.S.C. §1446(b). True and correct copies of the Complaint and all other documents filed in State Court in this action are attached hereto as Exhibits A through D.

## JOINDER

2.    Other than Defendants, no other non-fictitious defendants were named in the Complaint or served with a Summons.  As such, no joinder is necessary.  *See* 28 U.S.C. § 1441(a); *Salveson v. Western Bankcard Assn.*, 731 F.2d 1423, 1429 (9th Cir. 1984).

## JURISDICTION

3.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is an action which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs, as set forth more fully below.

## CITIZENSHIP OF PARTIES

4.    According to his Complaint, Plaintiff Michael Martinez was and is, both at the time of the filing of the subject state court action and at the time of this removal, a citizen of Arizona, and he is a resident of the State of Arizona. Complaint, ¶ 2.

5.    According to his Complaint, Plaintiff Juan Sanchez was and is, both at the time of the filing of the subject state court action and at the time of this removal, a citizen of Idaho, and he is a resident of the State of Idaho.  Complaint,

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-2-

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

¶ 3.

6. National EWP, Inc. is, and at the time of the filing of the subject state court action was, a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Nevada. *See* concurrently filed Declaration of Travis O'Briant ("O'Briant Decl."), ¶3; Complaint, caption. A corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002). Accordingly, as of the time of filing the Complaint and as of the time of removal, National EWP, Inc. is a citizen of the State of Nevada.

7. Defendant Simon Johnson was and is, both at the time of the filing of the subject state court action and at the time of this removal, a citizen of Utah, in that he is a resident of the State of Utah with the intent of continuing to reside in that state. Mr. Johnson has never lived in California. *See* concurrently filed Declaration of Simon Johnson ("Johnson Decl.") ¶1-4.

8. Defendant Kevin Simpson was and is, both at the time of the filing of the subject state court action and at the time of this removal, a citizen of Washington, in that he is a resident of the State of Washington with the intent of continuing to reside in that state. Mr. Simpson has never lived in California. *See* concurrently filed Declaration of Kevin Simpson ("Johnson Decl.") ¶1-4.

Thus, there is complete diversity of citizenship between Plaintiff and Defendants.

## **AMOUNT IN CONTROVERSY**

9. The amount in controversy in this action exceeds $75,000 (exclusive of interest and costs), as discussed below.

10. In their Complaint, Plaintiffs allege that they were both employed as driller assistants for National EWP Inc. and with Mr. Johnson and Mr. Simpson through an alter ego/joint employer theory. Complaint, ¶¶ 18, 23. Plaintiffs

-3-

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

allege that they were employed from approximately March 17, 2022 until around July 2022 and compensated $20 per hour. Complaint, ¶ 7.

8.     Plaintiffs allege that Defendants directed several racist comments toward Plaintiffs. Complaint, ¶¶ 36, 37. Plaintiffs further allege that they complained about the racist remarks, and improper compensation, and that defendants retaliated against them by exposing them to intolerable working conditions so that Mr. Martinez had to quit, and Defendants terminated Mr. Sanchez's employment. Complaint, ¶ 52. They have brought the following causes of action and requests for damages: (1) Wrongful Termination in Violation of Public Policy; (2) Wrongful Constructive Termination in Violation of Public Policy; (3) Hostile Work Environment in Violation of Gov't Code § 12940 Et Seq. (4); Failure to Prevent Hostile Work Environment Harassment and Discrimination in Violation of FEHA (Gov't Code § 12940 Et Seq.); and, (5) Retaliation in Violation of Labor Code § 1102.5. Plaintiffs seek lost wages, lost earning capacity, benefits, interest, general damages of emotional distress, punitive damages, and attorney's fees. *See also* Complaint, Prayer for Relief.

9.     If the Complaint does not clearly establish the jurisdictional amount, then "the court may consider facts in the removal petitions…" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Given Plaintiff's allegations in their Complaint, the lost wages for both Plaintiffs of $20 an hour damages claim alone since 2022 is more than sufficient to meet the jurisdictional minimum for diversity jurisdiction[1]. *See* Holly Decl., ¶ _. Accordingly, this requirement for diversity jurisdiction has also been met.

## PROCESS

10.     True and correct copies of **Exhibit "A"** includes the following documents are attached to this Notice of Removal:

---

[1] *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.")

(1) Plaintiffs' Complaint

(2) Plaintiffs' Summons

(3) Notice of Case Assignment and Case Management Conference

(4) Civil Case Cover Sheet and Addendum.

11.    These documents together with Proof of Service of Summons constitute the entire process and pleadings filed in the state court action.

12.    Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action will be promptly served on Plaintiff's counsel and such notice will be promptly filed with the Clerk of the Superior Court of the State of California, County of Imperial.

13.    WHEREFORE, Defendants pray that the above action pending in the Superior Court of California for the County of Imperial be removed from that Court to this Court. The removal of this action terminates all proceedings in Imperial County Superior Court. (*See* 28 U.S.C. §1446(d).)

14.    Venue is proper in this Court pursuant to 38 U.S.C. sections 84(c)(2), 1391 and 1446.

15.    This case should be assigned to the United States District Court for the Southern District of California, El Centro Division, located at 2003 W. Adams Ave, Ste 220 El Centro, CA 92243 because (1) a substantial part of the events or omissions which give rise to the claims alleged in the Action are alleged to have occurred in Imperial County; and (2) this division of the United States District Court for the Southern District of California embraces the place where the Action is currently pending.

///

///

///

///

///

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-5-

WHEREFORE, Defendants hereby remove this action from the Superior Court of the State of California for the County of Imperial to this Court and request the Court exercise jurisdiction over these proceedings as appropriate.

Dated: May 5, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By: _____
Mark S. Posard
Jennifer M. Holly
Heather T. Daiza
Attorneys for Defendants
NATIONAL EWP, INC.,
SIMON JOHNSON, and
KEVIN SIMPSON

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-6-

# EXHIBIT A

Jonathan P. LaCour, Esq. (SBN: 285098)
Lisa Noveck, Esq. (SBN: 316660)
Jameson Evans, Esq. (SBN: 340954)
Amanda M. Thompson, Esq. (SBN: 347005)
**EMPLOYEES FIRST LABOR LAW P.C.**
1 S. Fair Oaks Ave., Suite 200
Pasadena, California 91105
Telephone:     (310) 853-3461
Facsimile:     (949) 743-5442
Email:          jonathanl@pierrelacour.com
                 lisan@pierrelacour.com
                 jamesone@pierrelacour.com
                 amandat@pierrelacour.com

Attorneys for Plaintiffs, MICHAEL MARTINEZ and JUAN SANCHEZ

ELECTRONICALLY FILED
Superior Court of California,
County of Imperial
03/10/2023 at 05:04:50 PM
By: Angela Jantz, Deputy Clerk

Assigned for all purposes,
including trial, to Judge
L. Brooks Anderholt

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF IMPERIAL**   '23CV0835 JM   WVG

MICHAEL MARTINEZ, an individual, and JUAN SANCHEZ, an individual, on behalf of themselves,

                              Plaintiffs,

          v.

NATIONAL EWP, INC., a Nevada corporation, SIMON JOHNSON, an individual, KEVIN SIMPSON, an individual, and DOES 1 through 20, inclusive,

                              Defendants.

Case No.   ECU002809

**COMPLAINT FOR DAMAGES FOR:**

1. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**
2. **WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY;**
3. **HOSTILE WORK ENVIRONMENT IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.;**
4. **FAILURE TO PREVENT HOSTILE WORK ENVIRONMENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF FEHA (GOV'T. CODE § 12940 ET SEQ.); AND**
5. **RETALIATION IN VIOLATION OF LABOR CODE § 1102.5**

**DEMAND OVER $25,000**

**[DEMAND FOR JURY TRIAL]**

          **COMES NOW PLAINTIFFS,** MICHAEL MARTINEZ and JUAN SANCHEZ, for causes of action against Defendants and each of them, alleges as follows:

-1-

**COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.**

## JURISDICTION

1. This Court is the proper court, and this action is properly filed in Imperial County, because Defendants' obligations and liability arise therein, because Defendants maintain a location and transact business within Imperial County, and because the work that is the subject of this action was performed by Plaintiff in Imperial County.

## THE PARTIES

### PLAINTIFF MICHAEL MARTINEZ

2. Plaintiff, MICHAEL MARTINEZ (hereinafter referred to as "Mr. Martinez"), is and at all times relevant hereto was a resident of the County of Yuma, State of Arizona.

### PLAINTIFF JUAN SANCHEZ

3. Plaintiff, JUAN SANCHEZ (hereinafter referred to as "Mr. Sanchez"), is and at all times relevant hereto was a resident of the County of Bonneville, State of Idaho.

### DEFENDANT NATIONAL EWP, INC.

4. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendant NATIONAL EWP, INC. (hereinafter referred to as "NATIONAL EWP") was and is a California corporation doing business at 6502 East US Highway, Brawley 92227, in the County of Imperial, State of California.

### DEFENDANT SIMON JOHNSON

5. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendant SIMON JOHNSON (hereinafter referred to as "Mr. Johnson") was and is an individual residing in the County of Imperial, State of California, with his principal place of business located therein.

### DEFENDANT KEVIN SIMPSON

6. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendant KEVIN SIMPSON (hereinafter referred to as "Mr. Simpson") was and is an individual residing in the County of Imperial, State of California, with his principal place of business located therein.

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

7.   Plaintiffs are informed and believe, and based thereupon allege, that at all times relevant hereto, Defendants Mr. Johnson and Mr. Simpson were Plaintiffs' employers, managers, corporate agents, supervisors. Specifically, Plaintiffs are informed and believe, and based thereon allege, that Mr. Johnson and Mr. Simpson dictated Plaintiffs' compensation and had plenary ability to supervise, manage, hire, and fire, and did participate in the firing of Plaintiffs.  Defendant Mr. Johnson and Mr. Simpson exercised control and management of the work performed by Plaintiffs as to establish or change corporate policies for which Plaintiffs were required to perform.  Defendants Mr. Johnson and Mr. Simpson had the ability to ensure Plaintiffs were properly compensated and allotted meal breaks, rest periods, and other provisions issued to employees. Furthermore, Plaintiffs were of the belief that Mr. Johnson and Mr. Simpson were also their employers.

8.   On information and belief, Mr. Johnson and Mr. Simpson were the primary, if not the sole, decision makers and authors of its corporate policies as to: (1) setting employees' working hours and rates of pay; (2) whether, and how much, to pay employees for overtime hours worked; (3) whether to allow employees the opportunity to take meal periods and rest breaks; (4) determining whether to issue itemized wages statements to employees; (5) determining whether an employee was exempt or non-exempt for purposes of applicable compliance with the Labor Code and order of the Industrial Welfare Commission; and (6) ensure compliance with all applicable Labor Code sections and orders of the Industrial Welfare Commission.

9.   Plaintiffs are informed and believe, and based thereupon allege, that at all times relevant hereto, Defendants owned and operated a corporation and availed itself of the rights and privileges of the State of California.

10. Defendants were Plaintiffs' employer within the meaning of Government Code §§12926, subdivision (d), 12940, subdivisions (a),(h),(1), (h)(3)(A), and (i), and 12950, and regularly employs five (5) or more persons and is therefore subject to the jurisdiction of this Court.

11. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1-20, inclusive, are unknown to Plaintiff at this time and therefore said Defendants are sued by such fictitious names. Plaintiffs will seek leave to amend this complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiffs.

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

-3-

Plaintiffs are informed and believe, and based thereupon allege, that each of the fictitiously named Defendants is responsible for the wrongful acts alleged herein, and are therefore liable to Plaintiffs as alleged hereinafter.

12. Plaintiffs are informed and believe, and based thereupon allege, that at all times relevant hereto, Defendants, and each of them, were the agents, employees, managing agents, supervisors, co-conspirators, parent corporation, joint employers, alter egos, successors, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, successor status and/or joint venture and with the permission and consent of each of the other Defendants.

13. Plaintiffs are informed and believe, and based thereupon allege, that Defendants, and each of them, including those defendants named as DOES 1-20, acted in concert with one another to commit the wrongful acts alleged herein, and aided, abetted, incited, compelled and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so, including pursuant to Government Code §12940(i). Plaintiffs are further informed and believe, and based thereupon allege, that Defendants, and each of them, including those defendants named as DOES 1-20, and each of them, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to cause and actually causing Plaintiffs' harm.

14. Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

15. Mr. Martinez has filed complaints of harassment, retaliation, failure to prevent discrimination or retaliation, and wrongful termination under Government Code §§12940, et seq., the California Fair Employment and Housing Act ("FEHA") with the California Department of Fair Employment and Housing ("DFEH"), and has satisfied Plaintiff's administrative prerequisites with respect to these and all related filings.

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

-4-

16. Mr. Sanchez has filed complaints of harassment, failure to prevent discrimination or retaliation, and wrongful termination under Government Code §§12940, et seq., the California Fair Employment and Housing Act ("FEHA") with the California Department of Fair Employment and Housing ("DFEH"), and has satisfied Plaintiff's administrative prerequisites with respect to these and all related filings

<u>ALTER EGO, AGENCY, SUCCESSOR AND JOINT EMPLOYER</u>

17. Plaintiffs are informed and believe, and based thereon allege, that there exists such a unity of interest and ownership between Defendants and DOES 1-20 that the individuality and separateness of Defendant has ceased to exist.

18. Plaintiffs are informed and believe, and based thereon allege, that despite the formation of purported corporate existence, Defendants and DOES 1-20 are, in reality, one and the same as Defendants, including, but not limited to because:

    a. Defendants are completely dominated and controlled by DOES 1-20, who personally committed the frauds and violated the laws as set forth in this Complaint, and who have hidden and currently hide behind Defendants to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

    b. DOES 1-20 derive actual and significant monetary benefits by and through Defendant's unlawful conduct, and by using Defendants as the funding source for their own personal expenditures.

    c. Plaintiffs are informed and believe that Defendants and DOES 1-20, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

    d. Plaintiffs are informed and believe that Defendants do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

    e. Plaintiffs are informed and believe, and based thereon allege, that the business affairs of Defendants and DOES 1-20 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

inextricable confusion. Defendants are, and at all times relevant hereto was, used by DOES 1-20 as a mere shell and conduit for the conduct of certain of Defendants' affairs, and is, and was, the alter ego of DOES 1-20. The recognition of the separate existence of Defendants would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiffs for violations of the *Labor* Code and other statutory violations. The corporate existence of Defendants and DOES 1-20 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiffs herein.

19. Accordingly, Defendants constitute the alter ego of DOES 1-20, and the fiction of their separate corporate existence must be disregarded.

20. As a result of the aforementioned facts, Plaintiffs are informed and believe, and based thereon alleges that Defendants and DOES 1-20 are Plaintiffs' joint employers by virtue of a joint enterprise, and that Plaintiffs were employees of Defendants, and DOES 1-20. Plaintiffs performed services for each and every one of Defendants, and to the mutual benefit of all Defendants, and all Defendants shared control of Plaintiffs as employees, either directly or indirectly, and the manner in which Defendants' business was and is conducted.

21. Alternatively, Plaintiffs are informed and believe and, based thereupon allege, that as and between DOES 1-20 and Defendants, (1) there is an express or implied agreement of assumption pursuant to which DOES 1-20 agreed to be liable for the debts of Defendants, (2) the transaction between DOES 1-20 and Defendants amounts to a consolidation or merger of the two corporations, (3) DOES 1-20 is a mere continuation of Defendants, or (4) the transfer of assets to DOES 1-20 is for the fraudulent purpose of escaping liability for Defendants' debts. Accordingly, DOES 1-20 are the successors of Defendants, and are liable on that basis.

## FACTUAL ALLEGATIONS

22. Defendants own drilling and well services located throughout California, Arizona, Nevada, and Utah, including a location in Brawley, within Imperial County.

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

23. Mr. Martinez and Mr. Sanchez were both employed as driller assistants. Mr. Martinez was employed by Defendants from approximately March 17, 2022 until on or about July of 2022 at a rate of pay of $20 per hour.

24. During the Relevant Time Period, Plaintiffs are and/or have been non-exempt employees within the meaning of the *Labor Code*, and the implementing regulations of the IWC Wage Orders.

25. Defendants are or were the employer of all Plaintiffs during the Relevant Time Period. Defendants "employ(ed)" all Plaintiffs pursuant to the definition of "employ" within IWC Wage Order 5.

26. During the Relevant Time Period, Defendants exercised control over the wages, hours, and working conditions of Plaintiffs; suffered or permitted Plaintiffs to work and created a common law employment relationship with Plaintiffs.

27. Indeed, during their employment with Defendants, Plaintiffs' work was subject to Defendants' control, in that Defendants dictated how Plaintiffs were to carry out their job duties and what tasks Plaintiffs were to perform. Defendants also set Plaintiffs' schedules and rate of pay and required that Plaintiffs report to Defendants for approval on each task Plaintiffs had to complete.

28. As driller assistants, Mr. Martinez's and Mr. Sanchez's job duties included catching samples of material from the rig, mixing mud with silica-based powder, and placing rod arms on the rig so that drilling could begin. However, because the drills often broke down, Mr. Martinez and Mr. Sanchez's work often consisted of mechanical work, changing oil, and maintenance.

29. Mr. Martinez's schedule required him to work 12-hour days, 7 days a week for two weeks, before receiving one week off work.

30. On work days, Mr. Martinez would meet his team, which often included Mr. Sanchez, at a hotel. The team would drive to the job-site together in a company truck. Team members would take turn driving to the job-site.

31. In actuality, the team would arrive at the job-site 40 minutes earlier and leave thirty minutes later than scheduled. Despite working 70 minutes off-the-clock every day, Defendants only compensated Mr. Martinez for 15 of the 70 minutes worked.

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

32. This schedule remained the same every day. The only times it would change is during a biweekly safety meeting. On the days with safety meetings, Mr. Martinez and the rest of his team would be released from work 30 minutes later than usual. Defendants would not pay Mr. Martinez for this extra time.

33. Because Mr. Martinez and Mr. Sanchez worked at least 12-hour days, they were entitled not only to overtime rates of pay, but also double overtime rates of pay. However, Defendants did not pay Mr. Martinez or Mr. Sanchez at their appropriate rates.

34. Additionally, Mr. Martinez and Mr. Sanchez would not get paid overtime for working their seventh day straight. Instead, Defendants devised a timekeeping system designed to deprive Plaintiffs of their owed compensation. For instance, during the two-week period in which Mr. Martinez worked, he would be given three different paychecks. One paycheck would cover hours worked on Monday through Saturday. A second paycheck covered Saturday to Sunday. A third paycheck covered Sunday to Monday. None of these three weeks had the overtime Mr. Martinez was entitled to by virtue of his working seven straight days.

35. Defendants also failed to provide Mr. Martinez, Mr. Sanchez, or any member of the team with meal and rest breaks. Mr. Martinez's on-site supervisor would tell the team that they do not need breaks. As a result, Mr. Martinez would try to scarf his food down whenever he found himself without work for a couple of minutes.

36. There were a total of three crews on the job-site. Mr. Martinez and Mr. Sanchez were a part of the only crew with Hispanic members in it. Both of the on-site supervisors, Simon Johnson ("Mr. Johnson") and Kevin Simpson ("Mr. Simpson") are White.

37. Defendants directed several racist comments towards Mr. Martinez, Mr. Sanchez, and their crew. When Mr. Martinez was first hired by Defendants, the very first interaction he had was with Mr. Simpson. Mr. Simpson picked Mr. Martinez up in his truck and the first thing he said was, "another fucking Mexican?" Mr. Martinez was shocked and incredibly offended. This was Mr. Martinez's introduction to the company.

38. Additionally, whenever a tool would temporarily go missing, the supervisors would make comments such as, "probably one of you Mexicans."

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

-8-

39. On yet another occasion, Mr. Johnson said, "wow, at this rate, we are going to be outnumbered by the Mexicans."

40. The supervisors were not the only employees of Defendants who were making racist remarks. Indeed, a culture of racism permeated throughout Defendants. On one occasion, a mechanic came to the job-site to fix the rig. The mechanic told Mr. Martinez , Mr. Sanchez, and the rest of their crew, "Why can't you guys fix it? Aren't you Mexican?" After somebody complained about this particular incident, the mechanic got reprimanded, but not fired. Defendants were aware of the racist remarks used by its employees and supervisors.

41. Mr. Martinez made multiple complaints to his first line boss, the on-site driller, who told Mr. Martinez to take his complaints to the first line supervisors, Mr. Johnson and Mr. Simpson.

42. Mr. Martinez complained about racist remarks by the non-Latino workers and supervisors. He also complained about the lack of appropriate overtime and double-overtime pay, not being paid all owed wages, and the lack of proper paystubs that accurately reflect all the information required, such as sick leave. He made these complaints to both Mr. Johnson and Mr. Simpson, who, in response, laughed off Mr. Martinez's concerns and said that others have tried to complain in the past and that "it wouldn't work."

43. In response to Mr. Martinez's complaint about sick leave, Defendants said that Mr. Martinez was not entitled to it because Defendants are an out-of-state company. However, a few weeks later, Defendants' Human Resources Department told Mr. Martinez that he was entitled to sick time under California law.

44. Still, Defendants never adjusted their pay stubs to comply with Mr. Martinez's complaint in accordance with California law. Even after this acknowledgement from Defendants' Human Resources department, none of the workers' paystubs reflected sick time.

45. In response to Mr. Martinez's complaint about racist remarks, Mr. Johnson and Mr. Simpson shrugged it off; Mr. Johnson replied, "usually the Mexicans are the ones that start making fun of each other, so it's okay." This representation was not true. The Hispanic workers, such as Mr. Martinez and Mr. Sanchez did not initiate any such comments, nor were they comfortable with their supervisors

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

EMPLOYEES FIRST LABOR LAW
1 S FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

making these comments. The racist remarks were deeply offensive to Mr. Martinez, Mr. Sanchez, and their entire crew.

46. Further, Defendants were well aware of Defendants' racist culture and did nothing at all to prevent Defendants' pervasive harassment of Hispanic employees. Each of the Hispanic driller assistants were lumped onto the same team and were subordinated to Caucasian supervisors who continuously harassed them on the basis of their race to such an extent that the harassing behavior was known throughout the company. In other words, Defendants systematically engaged in a pattern of racist behaviors against employees who were Hispanic. This culture of harassment on the basis of race was so prevalent and deeply embedded into Defendants practices that Mr. Martinez's complaints regarding the harassment did not change Defendants' behavior in the slightest.

47. In regards to Mr. Martinez's complaint about lack of proper compensation, Defendants did not change anything and continued failing to adequately compensate Mr. Martinez.

48. In response to Mr. Martinez's complaints, each of which involved violations of California law, Defendants retaliated against Mr. Martinez through the continuous implementation of unlawful working conditions. The working conditions at Defendants became so unreasonable that, while Mr. Martinez wanted to continue his employment with Defendants, he eventually came to the realization that he had no option other than separate from Defendants.

49. This realization manifested itself on or about July of 2022, when one final incident pushed him over the edge. On this day, Mr. Sanchez was experiencing a medical emergency. The situation was so serious that Mr. Martinez thought that Mr. Sanchez might die. Mr. Martinez called the emergency team and rushed Mr. Sanchez to them. The emergency team, however, chose to leave Mr. Sanchez and return to the rig to notify the driller. This simple process took the emergency team one hour. During this hour, only Mr. Martinez, who had no medical experience, was with Mr. Sanchez. Finally, once the emergency team returned an hour later, Mr. Sanchez was being treated. When Mr. Johnson found out, he showed no concern for the health of Mr. Sanchez; he instead laughed and told the staff, "hey, can you take [Mr. Martinez] back to the mine?"

50. Even after being retaliated against, Mr. Martinez persevered working at Defendants under unlawful conditions. Yet this incident, which highlighted Defendants' lack of care towards the health

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

and safety of their own employees, on top of Defendants' retaliatory conduct against Mr. Martinez and the multitudinous violations of California law, left Mr. Martinez with no choice but to separate from Defendants.

51. Mr. Martinez worked the rest of the day, but told the driller that this was his last day and that he was leaving. That night, around 2:00 A.M., Mr. Johnson called Mr. Martinez. During this conversation, Mr. Martinez confirmed that he was leaving.

52. Defendants constructively terminated Mr. Martinez on or about July of 2022. Through Defendants' multitude of Labor Code violations, pervasive and severe harassment of Hispanic employees, including Mr. Martinez, and Defendants lack of care towards their employees' health and safety, Defendants intentionally created work conditions that were so intolerable that no reasonable person in Mr. Martinez's position would have continued working for Defendants. Left with no choice, Mr. Martinez had to separate himself from employment with Defendants as a result of these intolerable working conditions.

53. Defendants falsely represented to Mr. Sanchez that Mr. Martinez had been fired. Worse yet, Defendants terminated Mr. Sanchez because Mr. Sanchez was in contact with Mr. Martinez.

54. After separating from the company, Mr. Martinez complained to Defendants' Human Resources department about the lack of sick pay, as well as the fact that Defendants never gave Mr. Martinez his last check. To this day, Mr. Martinez has yet to receive his final check. Defendants claimed that they spent the money from Mr. Martinez's final paycheck on his benefits. Mr. Martinez never received a paystub for this time and does not know if his paid time off was cashed out.

55. Throughout the entirety of Plaintiffs' employment, Plaintiffs performed all of their job duties satisfactorily.

56. Pursuant to the Labor Code, California law and applicable Wage Orders, Plaintiffs are entitled to all damages, unpaid wages, statutory penalties, waiting time penalties, interest and attorney's fees and costs for the illegal and wrongful acts and omissions of Defendants, all as alleged throughout this complaint.

57. Defendants' conduct described herein was undertaken, authorized, and/or ratified by Defendant's officers, directors and/or managing agents, including, but not limited to those identified

-11-

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

herein as DOES 1 through 20, who were authorized and empowered to make decisions that reflect and/or create policy for Defendant. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of Defendants who further had advanced knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing agents whose precise identities are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1 through 20, inclusive.

58. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer general and special damages, including severe and profound pain and emotional distress, anxiety, depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses for psychological counseling and treatment, and past and future lost wages and benefits.

59. As a result of the above, Plaintiffs are entitled to past and future lost wages, bonuses, commissions, benefits and loss or diminution of earning capacity.

60. Plaintiffs claim general damages for emotional and mental distress and aggravation in a sum in excess of the jurisdictional minimum of this Court.

61. Because the acts taken toward Plaintiffs were carried out by officers, directors and/or managing agents acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of Plaintiffs' rights and in order to injure and damage Plaintiffs, Plaintiffs request that punitive damages be levied against Defendants, in sums in excess of the jurisdictional minimum of this Court.

**FIRST CAUSE OF ACTION
FOR WRONGFUL TERMINATION
IN VIOLATION OF THE PUBLIC POLICY OF THE STATE OF CALIFORNIA
BY PLAINTIFF SANCHEZ AGAINST DEFENDANT NATIONAL EWP AND ALL DOE
DEFENDANTS**

62. Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

63. At all relevant times mentioned in this complaint, the *Labor Code* sections cited were in full force and effect and were binding on Defendants. These laws require Defendants to, among other things, pay all wages earned by their employees in a timely manner. This includes, but is not limited to, overtime wages and compensation for meal and rest periods.

-12-

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

64. At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants must comply with wage-and-hour laws by paying employees their wages and overtime, providing them with meal periods and rest breaks, paying both during and after the termination of their employment, and supplying accurate and itemized wage statements. *Labor Code* § 90.5(a) articulates the public policies of this State vigorously to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower costs to themselves by failing to comply with minimum labor standards.

65. Through the conduct alleged in this Complaint, Defendants acted contrary to these public policies and violated specific provisions of the *Labor Code*.

66. The above said acts of Defendants constitute violations of the *Labor Code* and the public policy of the State of California embodied therein as set forth above. Defendants violated these laws by failing to pay Mr. Sanchez his owed wages in full and in a timely manner and failing to provide meal and rest periods.

67. Plaintiff is informed and believes, and based thereupon alleges, that Defendants' failure to comply with various sections of the *Labor Code* was a proximate cause in Plaintiff's damages as stated below.

68. The damage allegations, as set forth above inclusive, are herein incorporated by reference.

69. The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

70. Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including any and all fees pursuant to the *Labor Code*.

//

//

-13-

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

## SECOND CAUSE OF ACTION
## FOR WRONGFUL CONSTRUCTIVE TERMINATION
## IN VIOLATION OF THE PUBLIC POLICY OF THE STATE OF CALIFORNIA
## BY PLAINTIFF MARTINEZ AGAINST DEFENDANT NATIONAL EWP AND ALL DOE DEFENDANTS

71. Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

72. At all relevant times mentioned in this complaint, the *Labor Code* sections cited were in full force and effect and were binding on Defendants. These laws require Defendants to, among other things, pay all wages earned by their employees in a timely manner. This includes, but is not limited to, overtime wages and compensation for meal and rest periods.

73. At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants must comply with wage-and-hour laws by paying employees their wages and overtime, providing them with meal periods and rest breaks, paying both during and after the termination of their employment, and supplying accurate and itemized wage statements. *Labor Code* § 90.5(a) articulates the public policies of this State vigorously to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower costs to themselves by failing to comply with minimum labor standards.

74. Through the conduct alleged in this Complaint, Defendants acted contrary to these public policies and violated specific provisions of the *Labor Code*.

75. The above said acts of Defendants constitute violations of the *Labor Code* and the public policy of the State of California embodied therein as set forth above. Defendants violated these laws by failing to pay Mr. Martinez his owed wages in full and in a timely manner and failing to provide meal and rest periods.

76. Plaintiff is informed and believes, and based thereupon alleges, that Defendants' failure to comply with various sections of the *Labor Code* was a proximate cause in Plaintiff's damages as stated below.

77. The damage allegations, as set forth above inclusive, are herein incorporated by reference.

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

EMPLOYEES FIRST LABOR LAW
1 S FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

78. The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

79. Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including any and all fees pursuant to the *Labor Code*.

## THIRD CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT HARASSMENT
## CAL. GOV. CODE §§ 12940 ET SEQ.
## AGAINST ALL DEFENDANTS AND ALL DOE DEFENDANTS

80. Plaintiffs re-allege the information set forth in the preceding paragraphs and incorporate it into this cause of action as if it was fully alleged herein.

81. At all times relevant to this action, Plaintiffs were employed by Defendants.

82. At all times relevant to this action, Defendants were employers who regularly employed one or more persons within the meaning of Cal. Gov. Code §§ 12926(d), 12940(j)(4)(A).

83. At all times relevant to this action, Cal. Gov. Code §§ 12940(j)(1), 12940(j)(4)(C), and 12940(i) were in full force and effect and were binding upon Defendants.  These sections, inter alia, require Defendants to refrain from harassing an employee on the basis of race and to take all reasonable steps to prevent harassment from occurring, thereby preventing a hostile work environment for Plaintiffs.

84. At all times relevant to this action, Defendants created a hostile work environment for Plaintiffs by adversely affecting Plaintiffs' employment and harassing them on the basis of race after they complained of discrimination based on race, and otherwise engaged in a protected activity. This hostile work environment constitutes a continuing violation of Plaintiffs' legal rights.

85. Defendant National EWP is vicariously liable for Mr. Johnson's and Mr. Simpson's harassing conduct because it failed to take reasonable corrective measures even when management level employees had notice of the harassment.

86. Alternatively, Defendant National EWP is strictly liable for Mr. Johnson's and Mr. Simpson's harassing conduct pursuant to Cal. Gov. Code §12940(j)(1).

87. Plaintiffs' race led to Defendants' harassment of Plaintiff, in that it is conduct that occurred precisely because of Plaintiffs' race.

88. Plaintiffs' race was a substantial motivating factor for the acts of harassment as previously mentioned.

89. Such actions are unlawful harassment and discriminatory in violation of Cal. Gov. Code §§ 12900 *et seq*.

90. Defendants' conduct was a substantial factor in causing harm to Plaintiff as described in this Complaint.

91. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful employment, as their ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown, and Plaintiffs will seek leave of court to amend this Complaint to set forth the exact amount when it is ascertained.

92. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered general damages, as they were psychologically injured. Such injuries have caused, and continue to cause Plaintiffs great mental and physical pain and suffering, and loss of enjoyment, in an amount in excess of this Court's minimum jurisdictional threshold.

93. Plaintiffs are informed and believe that the employees, officers, directors, and/or managing agents of Defendants acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury involved, and with willful and conscious disregard for Plaintiffs' rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' employment rights were being violated, with the intent to deprive them of employment benefits. Accordingly, an award of punitive damages is warranted.

94. Plaintiffs are informed and believe that the actions of Defendants' employees, officers, directors, and/or managing agents, were undertaken with the prior approval, consent, and authorization of

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

Defendants and were subsequently authorized and ratified by it as well by and through its officers, directors, and/or managing agents.

## FOURTH CAUSE OF ACTION
## FAILURE TO PREVENT HOSTILE WORK ENVIRONMENT HARASSMENT AND DISCRIMINATION
## CAL. GOV. CODE §§ 12940 ET SEQ.
## AGAINST DEFENDANT NATIONAL EWP AND ALL DOE DEFENDANTS

95. Plaintiffs re-allege the information set forth in the preceding paragraphs and incorporate it into this cause of action as if it was fully alleged herein.

96. At all times relevant to this action, Plaintiffs were employed by Defendants.

97. At all times relevant to this action, Defendants were employers who regularly employed one or more persons within the meaning of Cal. Gov't Code §§ 12926(d), 12940(j)(4)(A).

98. At all times relevant to this action, Cal. Gov't Code §§ 12940(j)(1), 12940(j)(4)(C), and 12940(i) were in full force and effect and were binding upon Defendants. These sections, inter alia, require Defendants to refrain from harassing an employee on the basis of race and to take all reasonable steps to prevent harassment from occurring thereby preventing a hostile work environment for Plaintiff.

99. At all times relevant to this action, Mr. Johnson and Mr. Simpson severely and pervasively engaged in unwelcome and unwanted verbal conduct of an aggressive and demeaning nature with Plaintiffs regarding Plaintiffs' race. Furthermore, Plaintiffs made known to Defendants about the unlawful conduct, but Defendants failed to take all reasonable steps to prevent the harassment from occurring in violation of Cal. Gov't Code §§ 12940(k).

100. Defendant is vicariously liable for Mr. Johnson's and Mr. Simpson's harassing conduct because it failed to take reasonable corrective measures even when management level employees were aware of the harassment.

101. Alternatively, Defendant is strictly liable for Mr. Johnson's and Mr. Simpson's harassing conduct pursuant to California Government Code section 12940(j)(1).

102. Plaintiffs' race led to Mr. Johnson's and Mr. Simpson's harassment of Plaintiffs, in that it is conduct that occurred precisely because of Plaintiffs' race.

EMPLOYEES FIRST LABOR LAW
1 S FAIR OAKS AVE SUITE 200
PASADENA, CALIFORNIA 91105

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

103. Plaintiffs' race was a substantial motivating factor for the acts of harassment as previously mentioned.

104. Such actions are unlawful harassment and discriminatory in violation of Cal. Gov't Code §§ 12900 *et seq.*

105. Defendants' conduct was a substantial factor in causing harm to the Plaintiffs as described in the foregoing paragraphs of this Complaint.

106. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful employment, as their ability to obtain such employment and earning capacity has been diminished. The exact amount of such expenses and losses is presently unknown, and Plaintiffs will seek leave of court to amend this Complaint to set forth the exact amount when it is ascertained.

107. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered general damages, as they were psychologically injured. Such injuries have caused, and continue to cause Plaintiffs great mental and physical pain and suffering, and loss of enjoyment, in an amount in excess of this Court's minimum jurisdictional threshold.

108. As a direct and proximate result of Defendants' conduct, Plaintiffs, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to Plaintiffs and they will seek leave of court to amend this Complaint to set forth the exact amount when it has been ascertained.

109. Plaintiffs are informed and believe that the employees, officers, directors, and/or managing agents of Defendants acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury involved, and with willful and conscious disregard for Plaintiffs' rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' employment rights were being violated, with the intent to deprive them of employment benefits. Accordingly, an award of punitive damages is warranted.

110. Plaintiffs are informed and believe that the actions of Defendants' employees, officers, directors, and/or managing agents, were undertaken with the prior approval, consent, and authorization of

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

Defendants and were subsequently authorized and ratified by it as well by and through its officers, directors, and/or managing agents.

### FIFTH CAUSE OF ACTION
### FOR RETALIATION IN VIOLATION OF LABOR CODE § 1102.5
### BY PLAINTIFF MARTINEZ AGAINST DEFENDANT NATIONAL EWP AND ALL DOE DEFENDANTS

111. Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

112. *Labor Code* §1102.5(a) provides, in relevant part, that "An employer, or any person acting on behalf of the employer, shall not make adopt, or enforce any...rule...or policy preventing an employee from disclosing information...to a person with authority over the employer, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance...if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

113. *Labor Code* §1102.5(b), states, "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

114. Furthermore, under *Labor Code* §1102.5(c) "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Labor Code §1102.5(d) states, "[a]n employer, or any person acting on behalf

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

-19-

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment."

115. Defendants unlawfully retaliated against and terminated Plaintiff in retaliation for Plaintiff's complaint of Plaintiff's reasonable belief that Defendants were acting in violation of the California Labor Code.

116. Plaintiff had reasonable cause to believe that the above disclosures all involved violations of California law.

117. The statutes previously mentioned evince a public policy that benefits society at large, were well established at the time of Plaintiff's termination, and are substantial and fundamental.

118. Plaintiff's assertion of his rights under *Labor Code* § 1102.5 was a substantial motivating reason for Defendants' decision to terminate Plaintiff.

119. Defendants' conduct was a substantial factor in causing harm to Plaintiff as previously pled herein.

120. As a direct and proximate result of Defendants' conduct, Plaintiff has lost and continues to lose wages and work benefits caused by his termination.

121. Furthermore, Defendants are liable in civil penalties up to the statutory maximum of $10,000 for each violation of *Labor Code* § 1102.5(f), according to proof at trial. Plaintiff is also entitled to recover any and all damages resulting from Defendants' violations pursuant to *Labor Code* § 1102.5.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

-20-

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs hereby pray that the Court enter judgment in their favor and against Defendants, and each of them, as follows:

1. For a money judgment representing compensatory damages including lost wages, earnings, commissions, retirement benefits, and other employee benefits, and all other sums of money, together with interest on these amounts; for other special damages; and for general damages for mental pain and anguish and emotional distress, physical injury related to emotional distress and loss of earning capacity;

2. For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment in this matter;

3. For a declaratory judgment reaffirming Plaintiff's equal standing under the law and condemning Defendants' discriminatory practices;

4. For injunctive relief barring Defendants' discriminatory employment policies and practices in the future, and restoring Plaintiff to Plaintiff's former position with Defendants;

5. For punitive damages, pursuant to Civil Code §§3294 in amounts sufficient to punish Defendants for the wrongful conduct alleged herein and to deter such conduct in the future;

6. For costs of suit, attorneys' fees, and expert witness fees pursuant to the FEHA and/or any other basis;

7. For post-judgment interest; and

8. For any other relief that is just and proper.

DATED: March 10, 2023

**EMPLOYEES FIRST LABOR LAW**

By: _____

Jonathan P. LaCour, Esq.
Lisa Noveck, Esq.
Jameson Evans, Esq.
Amanda M. Thompson, Esq.
Attorneys for Plaintiffs
MICHAEL MARTINEZ and JUAN
SANCHEZ

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

## DEMAND FOR JURY TRIAL

Plaintiff demands trial of all issues by jury.

DATED:  March 10, 2023

EMPLOYEES FIRST LABOR LAW

By:
Jonathan P. LaCour, Esq.
Lisa Noveck, Esq.
Jameson Evans, Esq.
Amanda M. Thompson, Esq.
Attorneys for Plaintiffs
MICHAEL MARTINEZ and JUAN
SANCHEZ

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

-22-

COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES, AND INJUNCTIVE RELIEF
MARTINEZ, ET AL. V. NATIONAL EWP, INC., ET AL.

EMPLOYEES FIRST LABOR LAW
1 S. FAIR OAKS AVE. SUITE 200
PASADENA, CALIFORNIA 91105

# EXHIBIT 1

-23-



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 10, 2023

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202303-19920410
       Right to Sue: Martinez / National EWP, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD)) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

CRD - ENF 80 RS (Revised 12/22)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

Civil Rights Department

CRD - ENF 80 RS (Revised 12/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

March 10, 2023

Michael Martinez
1 S Fair Oak Ave. Suite 200
Pasadena, CA 91105

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202303-19920410
Right to Sue: Martinez / National EWP, Inc. et al.

Dear Michael Martinez:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 10, 2023 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person; employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing

CRD - ENF 80 RS (Revised 12/22)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

DRDOnlinerequests@dfeh.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 12/22)

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
## Under the California Fair Employment and Housing Act
## (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Michael Martinez                                          CRD No. 202303-19920410

                        Complainant,

vs.

National EWP, Inc.
6502 East US Highway
Brawley, CA 92227

Simon Johnson
6502 East US Highway
Brawley, CA 92227

Kevin Simpson
6502 East US Highway
Brawley, CA 92227

                        Respondents

_____

1. Respondent **National EWP, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Simon Johnson** individual as Co-Respondent(s).
Complainant is naming **Kevin Simpson** individual as Co-Respondent(s).

3. Complainant **Michael Martinez**, resides in the City of **Pasadena**, State of **CA.**

4. Complainant alleges that on or about **July 15, 2022**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's ancestry, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, sex/gender, gender identity or expression, sexual orientation, genetic information or characteristic, medical condition (cancer or genetic characteristic), military and veteran status, age (40 and over), marital status, other, sexual harassment- hostile environment,

-1-
*Complaint – CRD No. 202303-19920410*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

sexual harassment- quid pro quo, association with a member of a protected class, criminal history, pregnancy, childbirth, breast feeding, and/or related medical conditions, bereavement leave, disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, pregnancy disability leave (pdl), race (includes hairstyle and hair texture), reproductive health decisionmaking.

**Complainant was discriminated against** because of complainant's ancestry, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, sex/gender, gender identity or expression, sexual orientation, genetic information or characteristic, medical condition (cancer or genetic characteristic), military and veteran status, age (40 and over), marital status, other, pregnancy, childbirth, breast feeding, and/or related medical conditions, sexual harassment- hostile environment, sexual harassment- quid pro quo, association with a member of a protected class, criminal history, bereavement leave, disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, pregnancy disability leave (pdl), race (includes hairstyle and hair texture), reproductive health decisionmaking and as a result of the discrimination was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied the right to wear pants, denied any employment benefit or privilege, denied accommodation for religious beliefs, denied accommodation for pregnancy, other, denied work opportunities or assignments, denied or forced to transfer, denied accommodation for a disability, denied bereavement leave, denied employer paid health care while on family care and medical leave (cfra), denied employer paid health care while on pregnancy disability leave (pdl), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, denied pregnancy disability leave (pdl).

**Complainant experienced retaliation** because complainant reported patient abuse (hospital employees only), reported or resisted any form of discrimination or harassment, requested or used a pregnancy-disability-related accommodation, requested or used a disability-related accommodation, requested or used a religious accommodation, participated as a witness in a discrimination or harassment complaint, requested or used bereavement leave, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, requested or used pregnancy disability leave (pdl) and as a result was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied the right to wear pants, denied any employment benefit or privilege, denied accommodation for religious beliefs, denied accommodation for pregnancy, other, denied work opportunities or assignments, denied or forced to transfer, denied accommodation for a disability, denied bereavement leave, denied employer paid health care while on family care and medical leave (cfra), denied employer paid health care while on pregnancy disability leave (pdl), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, denied pregnancy disability leave (pdl).

-2-
Complaint – CRD No. 202303-19920410

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

**Additional Complaint Details:** Defendants own drilling and well services located throughout California, Arizona, Nevada, and Utah, including a location in Brawley, within Imperial County.

Mr. Martinez and Mr. Sanchez were both employed as driller assistants. Mr. Martinez was employed by Defendants from approximately March 17, 2022 until on or about July of 2022 at a rate of pay of $20 per hour.

During the Relevant Time Period, Plaintiffs are and/or have been non-exempt employees within the meaning of the Labor Code, and the implementing regulations of the IWC Wage Orders.

Defendants are or were the employer of all Plaintiffs during the Relevant Time Period. Defendants "employ(ed)" all Plaintiffs pursuant to the definition of "employ" within IWC Wage Order 5.

During the Relevant Time Period, Defendants exercised control over the wages, hours, and working conditions of Plaintiffs; suffered or permitted Plaintiffs to work and created a common law employment relationship with Plaintiffs.

Indeed, during their employment with Defendants, Plaintiffs' work was subject to Defendants' control, in that Defendants dictated how Plaintiffs were to carry out their job duties and what tasks Plaintiffs were to perform. Defendants also set Plaintiffs' schedules and rate of pay and required that Plaintiffs report to Defendants for approval on each task Plaintiffs had to complete.

As driller assistants, Mr. Martinez's and Mr. Sanchez's job duties included catching samples of material from the rig, mixing mud with silica-based powder, and placing rod arms on the rig so that drilling could begin. However, because the drills often broke down, Mr. Martinez and Mr. Sanchez's work often consisted of mechanical work, changing oil, and maintenance.

Mr. Martinez's schedule required him to work 12-hour days, 7 days a week for two weeks, before receiving one week off work.

On work days, Mr. Martinez would meet his team, which often included Mr. Sanchez, at a hotel. The team would drive to the job-site together in a company truck. Team members would take turn driving to the job-site.

In actuality, the team would arrive at the job-site 40 minutes earlier and leave thirty minutes later than scheduled. Despite working 70 minutes off-the-clock every day, Defendants only compensated Mr. Martinez for 15 of the 70 minutes worked.

This schedule remained the same every day. The only times it would change is during a biweekly safety meeting. On the days with safety meetings, Mr. Martinez and the rest of his team would be released from work 30 minutes later than usual. Defendants would not pay Mr. Martinez for this extra time.

Because Mr. Martinez and Mr. Sanchez worked at least 12-hour days, they were entitled not only to overtime rates of pay, but also double overtime rates of pay. However, Defendants did not pay Mr. Martinez or Mr. Sanchez at their appropriate rates.

Additionally, Mr. Martinez and Mr. Sanchez would not get paid overtime for working their seventh day straight. Instead, Defendants devised a timekeeping system designed to deprive Plaintiffs of their owed compensation. For instance, during the two-week period in which Mr. Martinez worked, he would be given three different paychecks. One paycheck

-3-
*Complaint – CRD No. 202303-19920410*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

would cover hours worked on Monday through Saturday. A second paycheck covered Saturday to Sunday. A third paycheck covered Sunday to Monday. None of these three weeks had the overtime Mr. Martinez was entitled to by virtue of his working seven straight days.

Defendants also failed to provide Mr. Martinez, Mr. Sanchez, or any member of the team with meal and rest breaks. Mr. Martinez's on-site supervisor would tell the team that they do not need breaks. As a result, Mr. Martinez would try to scarf his food down whenever he found himself without work for a couple of minutes.

There were a total of three crews on the job-site. Mr. Martinez and Mr. Sanchez were a part of the only crew with Hispanic members in it. Both of the on-site supervisors, Simon Johnson ("Mr. Johnson") and Kevin Simpson ("Mr. Simpson") are White.

Defendants directed several racist comments towards Mr. Martinez, Mr. Sanchez, and their crew. When Mr. Martinez was first hired by Defendants, the very first interaction he had was with Mr. Simpson. Mr. Simpson picked Mr. Martinez up in his truck and the first thing he said was, "another fucking Mexican?" Mr. Martinez was shocked and incredibly offended. This was Mr. Martinez's introduction to the company.

Additionally, whenever a tool would temporarily go missing, the supervisors would make comments such as, "probably one of you Mexicans."

On yet another occasion, Mr. Johnson said, "wow, at this rate, we are going to be outnumbered by the Mexicans."

The supervisors were not the only employees of Defendants who were making racist remarks. Indeed, a culture of racism permeated throughout Defendants. On one occasion, a mechanic came to the job-site to fix the rig. The mechanic told Mr. Martinez , Mr. Sanchez, and the rest of their crew, "Why can't you guys fix it? Aren't you Mexican?" After somebody complained about this particular incident, the mechanic got reprimanded, but not fired.

Defendants were aware of the racist remarks used by its employees and supervisors. Mr. Martinez made multiple complaints to his first line boss, the on-site driller, who told Mr. Martinez to take his complaints to the first line supervisors, Mr. Johnson and Mr. Simpson.

Mr. Martinez complained about racist remarks by the non-Latino workers and supervisors. He also complained about the lack of appropriate overtime and double-overtime pay, not being paid all owed wages, and the lack of proper paystubs that accurately reflect all the information required, such as sick leave. He made these complaints to both Mr. Johnson and Mr. Simpson, who, in response, laughed off Mr. Martinez's concerns and said that others have tried to complain in the past and that "it wouldn't work."

In response to Mr. Martinez's complaint about sick leave, Defendants said that Mr. Martinez was not entitled to it because Defendants are an out-of-state company. However, a few weeks later, Defendants' Human Resources Department told Mr. Martinez that he was entitled to sick time under California law.

Still, Defendants never adjusted their pay stubs to comply with Mr. Martinez's complaint in accordance with California law. Even after this acknowledgement from Defendants' Human Resources department, none of the workers' paystubs reflected sick time.

In response to Mr. Martinez's complaint about racist remarks, Mr. Johnson and Mr. Simpson shrugged it off; Mr. Johnson replied, "usually the Mexicans are the ones that start making fun of each other, so it's okay." This representation was not true. The Hispanic workers, such as Mr. Martinez and Mr. Sanchez did not initiate any such comments, nor were they

-4-
*Complaint – CRD No. 202303-19920410*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

comfortable with their supervisors making these comments. The racist remarks were deeply offensive to Mr. Martinez, Mr. Sanchez, and their entire crew.

Further, Defendants were well aware of Defendants' racist culture and did nothing at all to prevent Defendants' pervasive harassment of Hispanic employees. Each of the Hispanic driller assistants were lumped onto the same team and were subordinated to Caucasian supervisors who continuously harassed them on the basis of their race to such an extent that the harassing behavior was known throughout the company. In other words, Defendants systematically engaged in a pattern of racist behaviors against employees who were Hispanic. This culture of harassment on the basis of race was so prevalent and deeply embedded into Defendants practices that Mr. Martinez's complaints regarding the harassment did not change Defendants' behavior in the slightest.

In regards to Mr. Martinez's complaint about lack of proper compensation, Defendants did not change anything and continued failing to adequately compensate Mr. Martinez.

In response to Mr. Martinez's complaints, each of which involved violations of California law, Defendants retaliated against Mr. Martinez through the continuous implementation of unlawful working conditions. The working conditions at Defendants became so unreasonable that, while Mr. Martinez wanted to continue his employment with Defendants, he eventually came to the realization that he had no option other than separate from Defendants.

This realization manifested itself on or about July of 2022, when one final incident pushed him over the edge. On this day, Mr. Sanchez was experiencing a medical emergency. The situation was so serious that Mr. Martinez thought that Mr. Sanchez might die. Mr. Martinez called the emergency team and rushed Mr. Sanchez to them. The emergency team, however, chose to leave Mr. Sanchez and return to the rig to notify the driller. This simple process took the emergency team one hour. During this hour, only Mr. Martinez, who had no medical experience, was with Mr. Sanchez. Finally, once the emergency team returned an hour later, Mr. Sanchez was being treated. When Mr. Johnson found out, he showed no concern for the health of Mr. Sanchez; he instead laughed and told the staff, "hey, can you take [Mr. Martinez] back to the mine?"

Even after being retaliated against, Mr. Martinez persevered working at Defendants under unlawful conditions. Yet this incident, which highlighted Defendants' lack of care towards the health and safety of their own employees, on top of Defendants' retaliatory conduct against Mr. Martinez and the multitudinous violations of California law, left Mr. Martinez with no choice but to separate from Defendants.

Mr. Martinez worked the rest of the day, but told the driller that this was his last day and that he was leaving. That night, around 2:00 A.M., Mr. Johnson called Mr. Martinez. During this conversation, Mr. Martinez confirmed that he was leaving.

Defendants constructively terminated Mr. Martinez on or about July of 2022. Through Defendants' multitude of Labor Code violations, pervasive and severe harassment of Hispanic employees, including Mr. Martinez, and Defendants lack of care towards their employees' health and safety, Defendants intentionally created work conditions that were so intolerable that no reasonable person in Mr. Martinez's position would have continued working for Defendants. Left with no choice, Mr. Martinez had to separate himself from employment with Defendants as a result of these intolerable working conditions.

Defendants falsely represented to Mr. Sanchez that Mr. Martinez had been fired. Worse yet, Defendants terminated Mr. Sanchez because Mr. Sanchez was in contact with Mr. Martinez.

-5-
Complaint – CRD No. 202303-19920410

Date Filed: March 10, 2023

After separating from the company, Mr. Martinez complained to Defendants' Human Resources department about the lack of sick pay, as well as the fact that Defendants never gave Mr. Martinez his last check. To this day, Mr. Martinez has yet to receive his final check. Defendants claimed that they spent the money from Mr. Martinez's final paycheck on his benefits. Mr. Martinez never received a paystub for this time and does not know if his paid time off was cashed out.

*Complaint – CRD No. 202303-19920410*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Jonathan P. LaCour**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On March 10, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Pasadena, California**

-7-
*Complaint – CRD No. 202303-19920410*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

March 10, 2023

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202303-19920910
       Right to Sue: Sanchez / National EWP, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD)) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

CRD · ENF 80 RS (Revised 12/22)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

Civil Rights Department

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

March 10, 2023

Juan Sanchez
1 S Fair Oak Ave. Suite 200
Pasadena, CA 91105

RE:   **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202303-19920910
Right to Sue: Sanchez / National EWP, Inc. et al.

Dear Juan Sanchez:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 10, 2023 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing

CRD - ENF 80 RS (Revised 12/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

DRDOnlinerequests@dfeh.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 12/22)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Juan Sanchez                                              CRD No. 202303-19920910

                                    Complainant,

vs.

National EWP, Inc.
6502 East US Highway,
Brawley, CA 92227

Simon Johnson
6502 East US Highway
Brawley, CA 92227

Kevin Simpson
6502 East US Highway,
Brawley, CA 92227

                                    Respondents

---

1. Respondent **National EWP, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Simon Johnson** individual as Co-Respondent(s).
Complainant is naming **Kevin Simpson** individual as Co-Respondent(s).

3. Complainant **Juan Sanchez**, resides in the City of **Pasadena**, State of **CA.**

4. Complainant alleges that on or about **July 15, 2022**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's ancestry, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, sex/gender, gender identity or expression, sexual orientation, genetic information or characteristic, medical condition (cancer or genetic characteristic), military and veteran status, age (40 and over), marital status, other, sexual harassment- hostile environment,

-1-
*Complaint – CRD No. 202303-19920910*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

sexual harassment- quid pro quo, association with a member of a protected class, criminal history, pregnancy, childbirth, breast feeding, and/or related medical conditions, bereavement leave, disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, pregnancy disability leave (pdl), race (includes hairstyle and hair texture), reproductive health decisionmaking.

**Complainant was discriminated against** because of complainant's ancestry, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, sex/gender, gender identity or expression, sexual orientation, genetic information or characteristic, medical condition (cancer or genetic characteristic), military and veteran status, age (40 and over), marital status, other, pregnancy, childbirth, breast feeding, and/or related medical conditions, sexual harassment- hostile environment, sexual harassment- quid pro quo, association with a member of a protected class, criminal history, bereavement leave, disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, pregnancy disability leave (pdl), race (includes hairstyle and hair texture), reproductive health decisionmaking and as a result of the discrimination was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied the right to wear pants, denied any employment benefit or privilege, denied accommodation for religious beliefs, denied accommodation for pregnancy, other, denied work opportunities or assignments, denied or forced to transfer, denied accommodation for a disability, denied bereavement leave, denied employer paid health care while on family care and medical leave (cfra), denied employer paid health care while on pregnancy disability leave (pdl), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, denied pregnancy disability leave (pdl).

**Complainant experienced retaliation** because complainant reported patient abuse (hospital employees only), reported or resisted any form of discrimination or harassment, requested or used a pregnancy-disability-related accommodation, requested or used a disability-related accommodation, requested or used a religious accommodation, participated as a witness in a discrimination or harassment complaint, requested or used bereavement leave, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, requested or used pregnancy disability leave (pdl) and as a result was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied the right to wear pants, denied any employment benefit or privilege, denied accommodation for religious beliefs, denied accommodation for pregnancy, other, denied work opportunities or assignments, denied or forced to transfer, denied accommodation for a disability, denied bereavement leave, denied employer paid health care while on family care and medical leave (cfra), denied employer paid health care while on pregnancy disability leave (pdl), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, denied pregnancy disability leave (pdl).

-2-

Complaint -- CRD No. 202303-19920910

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

**Additional Complaint Details:** Defendants own drilling and well services located throughout California, Arizona, Nevada, and Utah, including a location in Brawley, within Imperial County.

Mr. Martinez and Mr. Sanchez were both employed as driller assistants. Mr. Martinez was employed by Defendants from approximately March 17, 2022 until on or about July of 2022 at a rate of pay of $20 per hour.

During the Relevant Time Period, Plaintiffs are and/or have been non-exempt employees within the meaning of the Labor Code, and the implementing regulations of the IWC Wage Orders.

Defendants are or were the employer of all Plaintiffs during the Relevant Time Period. Defendants "employ(ed)" all Plaintiffs pursuant to the definition of "employ" within IWC Wage Order 5.

During the Relevant Time Period, Defendants exercised control over the wages, hours, and working conditions of Plaintiffs; suffered or permitted Plaintiffs to work and created a common law employment relationship with Plaintiffs.

Indeed, during their employment with Defendants, Plaintiffs' work was subject to Defendants' control, in that Defendants dictated how Plaintiffs were to carry out their job duties and what tasks Plaintiffs were to perform. Defendants also set Plaintiffs' schedules and rate of pay and required that Plaintiffs report to Defendants for approval on each task Plaintiffs had to complete.

As driller assistants, Mr. Martinez's and Mr. Sanchez's job duties included catching samples of material from the rig, mixing mud with silica-based powder, and placing rod arms on the rig so that drilling could begin. However, because the drills often broke down, Mr. Martinez and Mr. Sanchez's work often consisted of mechanical work, changing oil, and maintenance.

Mr. Martinez's schedule required him to work 12-hour days, 7 days a week for two weeks, before receiving one week off work.

On work days, Mr. Martinez would meet his team, which often included Mr. Sanchez, at a hotel. The team would drive to the job-site together in a company truck. Team members would take turn driving to the job-site.

In actuality, the team would arrive at the job-site 40 minutes earlier and leave thirty minutes later than scheduled. Despite working 70 minutes off-the-clock every day, Defendants only compensated Mr. Martinez for 15 of the 70 minutes worked.

This schedule remained the same every day. The only times it would change is during a biweekly safety meeting. On the days with safety meetings, Mr. Martinez and the rest of his team would be released from work 30 minutes later than usual. Defendants would not pay Mr. Martinez for this extra time.

Because Mr. Martinez and Mr. Sanchez worked at least 12-hour days, they were entitled not only to overtime rates of pay, but also double overtime rates of pay. However, Defendants did not pay Mr. Martinez or Mr. Sanchez at their appropriate rates.

Additionally, Mr. Martinez and Mr. Sanchez would not get paid overtime for working their seventh day straight. Instead, Defendants devised a timekeeping system designed to deprive Plaintiffs of their owed compensation. For instance, during the two-week period in which Mr. Martinez worked, he would be given three different paychecks. One paycheck

-3-

*Complaint – CRD No. 202303-19920910*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

would cover hours worked on Monday through Saturday. A second paycheck covered Saturday to Sunday. A third paycheck covered Sunday to Monday. None of these three weeks had the overtime Mr. Martinez was entitled to by virtue of his working seven straight days.

Defendants also failed to provide Mr. Martinez, Mr. Sanchez, or any member of the team with meal and rest breaks. Mr. Martinez's on-site supervisor would tell the team that they do not need breaks. As a result, Mr. Martinez would try to scarf his food down whenever he found himself without work for a couple of minutes.

There were a total of three crews on the job-site. Mr. Martinez and Mr. Sanchez were a part of the only crew with Hispanic members in it. Both of the on-site supervisors, Simon Johnson ("Mr. Johnson") and Kevin Simpson ("Mr. Simpson") are White.

Defendants directed several racist comments towards Mr. Martinez, Mr. Sanchez, and their crew. When Mr. Martinez was first hired by Defendants, the very first interaction he had was with Mr. Simpson. Mr. Simpson picked Mr. Martinez up in his truck and the first thing he said was, "another fucking Mexican?" Mr. Martinez was shocked and incredibly offended. This was Mr. Martinez's introduction to the company.

Additionally, whenever a tool would temporarily go missing, the supervisors would make comments such as, "probably one of you Mexicans."

On yet another occasion, Mr. Johnson said, "wow, at this rate, we are going to be outnumbered by the Mexicans."

The supervisors were not the only employees of Defendants who were making racist remarks. Indeed, a culture of racism permeated throughout Defendants. On one occasion, a mechanic came to the job-site to fix the rig. The mechanic told Mr. Martinez , Mr. Sanchez, and the rest of their crew, "Why can't you guys fix it? Aren't you Mexican?" After somebody complained about this particular incident, the mechanic got reprimanded, but not fired.

Defendants were aware of the racist remarks used by its employees and supervisors. Mr. Martinez made multiple complaints to his first line boss, the on-site driller, who told Mr. Martinez to take his complaints to the first line supervisors, Mr. Johnson and Mr. Simpson.

Mr. Martinez complained about racist remarks by the non-Latino workers and supervisors. He also complained about the lack of appropriate overtime and double-overtime pay, not being paid all owed wages, and the lack of proper paystubs that accurately reflect all the information required, such as sick leave. He made these complaints to both Mr. Johnson and Mr. Simpson, who, in response, laughed off Mr. Martinez's concerns and said that others have tried to complain in the past and that "it wouldn't work."

In response to Mr. Martinez's complaint about sick leave, Defendants said that Mr. Martinez was not entitled to it because Defendants are an out-of-state company. However, a few weeks later, Defendants' Human Resources Department told Mr. Martinez that he was entitled to sick time under California law.

Still, Defendants never adjusted their pay stubs to comply with Mr. Martinez's complaint in accordance with California law. Even after this acknowledgement from Defendants' Human Resources department, none of the workers' paystubs reflected sick time.

In response to Mr. Martinez's complaint about racist remarks, Mr. Johnson and Mr. Simpson shrugged it off; Mr. Johnson replied, "usually the Mexicans are the ones that start making fun of each other, so it's okay." This representation was not true. The Hispanic workers, such as Mr. Martinez and Mr. Sanchez did not initiate any such comments, nor were they

-4-

*Complaint – CRD No. 202303-19920910*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

comfortable with their supervisors making these comments. The racist remarks were deeply offensive to Mr. Martinez, Mr. Sanchez, and their entire crew.

Further, Defendants were well aware of Defendants' racist culture and did nothing at all to prevent Defendants' pervasive harassment of Hispanic employees. Each of the Hispanic driller assistants were lumped onto the same team and were subordinated to Caucasian supervisors who continuously harassed them on the basis of their race to such an extent that the harassing behavior was known throughout the company. In other words, Defendants systematically engaged in a pattern of racist behaviors against employees who were Hispanic. This culture of harassment on the basis of race was so prevalent and deeply embedded into Defendants practices that Mr. Martinez's complaints regarding the harassment did not change Defendants' behavior in the slightest.

In regards to Mr. Martinez's complaint about lack of proper compensation, Defendants did not change anything and continued failing to adequately compensate Mr. Martinez.

In response to Mr. Martinez's complaints, each of which involved violations of California law, Defendants retaliated against Mr. Martinez through the continuous implementation of unlawful working conditions. The working conditions at Defendants became so unreasonable that, while Mr. Martinez wanted to continue his employment with Defendants, he eventually came to the realization that he had no option other than separate from Defendants.

This realization manifested itself on or about July of 2022, when one final incident pushed him over the edge. On this day, Mr. Sanchez was experiencing a medical emergency. The situation was so serious that Mr. Martinez thought that Mr. Sanchez might die. Mr. Martinez called the emergency team and rushed Mr. Sanchez to them. The emergency team, however, chose to leave Mr. Sanchez and return to the rig to notify the driller. This simple process took the emergency team one hour. During this hour, only Mr. Martinez, who had no medical experience, was with Mr. Sanchez. Finally, once the emergency team returned an hour later, Mr. Sanchez was being treated. When Mr. Johnson found out, he showed no concern for the health of Mr. Sanchez; he instead laughed and told the staff, "hey, can you take [Mr. Martinez] back to the mine?"

Even after being retaliated against, Mr. Martinez persevered working at Defendants under unlawful conditions. Yet this incident, which highlighted Defendants' lack of care towards the health and safety of their own employees, on top of Defendants' retaliatory conduct against Mr. Martinez and the multitudinous violations of California law, left Mr. Martinez with no choice but to separate from Defendants.

Mr. Martinez worked the rest of the day, but told the driller that this was his last day and that he was leaving. That night, around 2:00 A.M., Mr. Johnson called Mr. Martinez. During this conversation, Mr. Martinez confirmed that he was leaving.

Defendants constructively terminated Mr. Martinez on or about July of 2022. Through Defendants' multitude of Labor Code violations, pervasive and severe harassment of Hispanic employees, including Mr. Martinez, and Defendants lack of care towards their employees' health and safety, Defendants intentionally created work conditions that were so intolerable that no reasonable person in Mr. Martinez's position would have continued working for Defendants. Left with no choice, Mr. Martinez had to separate himself from employment with Defendants as a result of these intolerable working conditions.

Defendants falsely represented to Mr. Sanchez that Mr. Martinez had been fired. Worse yet, Defendants terminated Mr. Sanchez because Mr. Sanchez was in contact with Mr. Martinez.

-5-

*Complaint – CRD No. 202303-19920910*

Date Filed: March 10, 2023



After separating from the company, Mr. Martinez complained to Defendants' Human Resources department about the lack of sick pay, as well as the fact that Defendants never gave Mr. Martinez his last check. To this day, Mr. Martinez has yet to receive his final check. Defendants claimed that they spent the money from Mr. Martinez's final paycheck on his benefits. Mr. Martinez never received a paystub for this time and does not know if his paid time off was cashed out.

-6-

*Complaint – CRD No. 202303-19920910*

Date Filed: March 10, 2023

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Jonathan P. LaCour**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On March 10, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                                      **Pasadena, California**

-7-
*Complaint – CRD No. 202303-19920910*

Date Filed: March 10, 2023

                                              CRD-ENF 80 RS (Revised 12/22)

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>**(AVISO AL DEMANDADO):**<br>NATIONAL EWP, INC., a Nevada corporation, SIMON JOHNSON, an individual, KEVIN SIMPSON, an individual, and DOES 1 through 20,<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**<br>MICHAEL MARTINEZ, an individual, and JUAN SANCHEZ, an individual, on behalf of themselves | **FOR COURT USE ONLY**<br>**(SOLO PARA USO DE LA CORTE)**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Imperial<br>03/10/2023 at 05:04:50 PM<br>By: Angela Jantz, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* El Centro Courthouse<br>939 West Main Street, El Centro, CA 92243 | **CASE NUMBER.**<br>**(Número del Caso):**<br>**ECU002809** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan P. LaCour, 1 S. Fair Oaks Ave., Suite 200, Pasadena, California 91105

| DATE: March 10, 2023<br>*(Fecha)* | Maria Rhinehart | Clerk, by<br>*(Secretario)* A. Jantz | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF IMPERIAL**
939 Main Street
El Centro, California 92243

**FILED**
Superior Court of California,
County of Imperial
**03/14/2023 at 08:58:43 AM**
By: Angela Jantz, Deputy Clerk

| | |
|---|---|
| **Michael Martinez et al**<br>          Plaintiff/Petitioner,<br><br>vs.<br><br>**National EWP, Inc. et al**<br>          Defendant/Respondent. | Case No.  ECU002809<br><br>**Notice of:**<br><br>**Case Management Conference** |

**TO ALL PARTIES AND/OR ATTORNEYS OF RECORD:**

1.  Notice is given that a **CASE MANAGEMENT CONFERENCE** has been scheduled as follows:

    **Case Management Conference: September 6, 2023 at 8:30 AM in El Centro Dept. 9.**

2.  You must file and serve a completed Case Management Conference Statement at least fifteen (15) days before the case management conference.
3.  You must be familiar with the case and be fully prepared to participate effectively in the case management conference.
4.  At the case management conference the court may make pretrial orders, including the following:
    a)    An order establishing a discovery schedule.
    b)    An order referring the case to arbitration.
    c)    An order dismissing fictitious defendants.
    d)    An order scheduling exchange of expert witness information.
    e)    An order setting subsequent conferences and the trial date.
    f)    Other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code § 68600 et seq.).
5.  Parties wishing to appear remotely must comply with CRC 3.672 and register online at https://imperial.courts.ca.gov/
6.  **SANCTIONS:** If you do not file the Case Management Conference Statement required by CRC 3.725, or attend the case management conference or participate effectively in the conference, the Court may impose sanctions (including dismissal of the case, striking of the answer, and payment of money).

Date: 03/14/2023

Maria Rhinehart, Court Executive Officer

By:_____
        A.   Jantz, Deputy Clerk

ICSC  C-114 01/09

CRC 3.725 and Imperial County Local Rule 3.1.2
Government Code §68600 et seq.

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jonathan P. LaCour, Esq. (SBN 285098)<br>Employees First Labor Law P.C.<br>1 S. Fair Oaks Ave., Suite 200<br>Pasadena, California 91105<br>TELEPHONE NO.: (310) 853-3461   FAX NO.: (949) 743-5442<br>ATTORNEY FOR *(Name):* Michael Martinez | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Imperial<br>03/10/2023 at 05:04:50 PM<br>By: Angela Jantz, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **IMPERIAL**
STREET ADDRESS: 939 West Main Street
MAILING ADDRESS: 939 West Main Street
CITY AND ZIP CODE: El Centro, 92243
BRANCH NAME: EL Centro Courthouse

CASE NAME:
Michael Martinez v. National Ewp, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | ECU002809<br>JUDGE: L. Brooks Anderholt<br>DEPT: 9 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary  b.☑ nonmonetary; declaratory or injunctive relief  c.☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 10, 2023
Jonathan P. LaCour
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] — **CIVIL CASE COVER SHEET** — Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

ELECTRONICALLY FILED
Superior Court of California,
County of Imperial
05/05/2023 at 12:44:56 PM
By: Marissa Moran, Deputy Clerk

Mark S. Posard  (SBN:  208790)
mposard@grsm.com
Jennifer M. Holly  (SBN:  263705)
jholly@grsm.com
Heather T. Daiza  (SBN:  323272)
HDAIZA@GRSM.COM
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071
Telephone:  (213) 576 5000
Facsimile:  (213) 680-4470

Attorneys for Defendants, NATIONAL EWP, INC.,
SIMON JOHNSON, and KEVIN SIMPSON

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

SUPERIOR COURT OF CALIFORNIA

COUNTY OF IMPERIAL

| | |
|---|---|
| MICHAEL MARTINEZ, an individual, and JUAN SANCHEZ, an individual, on behalf of themselves, <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL EWP, INC., a Nevada corporation, SIMON JOHNSON, an individual, KEVIN SIMPSON, an individual, and DOES 1 through 20, inclusive, <br><br> Defendants. | CASE NO.  ECU002809 <br><br> **DEFENDANTS' ANSWER TO COMPLAINT** <br><br> Complaint Filed: 03/10/2023 <br> Dept:   9 <br> Judge: L. Brooks Anderholt |

Defendants NATIONAL EWP, INC., SIMON JOHNSON, and KEVIN SIMPSON ("Defendants"), hereby answer the Complaint by Plaintiffs MICHAEL MARTINEZ and JUAN SANCHEZ ("Plaintiffs") as follows:

**AFFIRMATIVE DEFENSES**

Pursuant to California Code of Civil Procedure section 431.30(d), Defendants deny generally each and every material allegation of Plaintiffs' unverified Complaint, and the cause of action contained therein. Defendants further deny, generally and specifically, that Plaintiffs suffered any injury or damage whatsoever as a result of the alleged conduct of Defendants, or

-1-

**DEFENDANTS' ANSWER TO COMPLAINT**

that Plaintiffs are entitled to any relief against Defendants whatsoever as a result of Defendants' alleged conduct.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

Defendants assert that Plaintiffs' Complaint, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendants.

## SECOND AFFIRMATIVE DEFENSE

### (Laches/Waiver/Estoppel/Unclean Hands)

Defendants assert that Plaintiff's Complaint is barred by the doctrines of laches, waiver, estoppel, and/or unclean hands.

## THIRD AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Defendants assert that Plaintiffs have failed to exercise reasonable care and diligence to mitigate his damages, if any, and is therefore barred from recovering such damages.

## FOURTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Defendants allege that the causes of action stated in the Complaint are barred by applicable state and federal statutes of limitations.

## FIFTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

Defendants assert that Plaintiffs' Complaint, including the damages prayed for therein, is barred and/or limited by the doctrine of "after-acquired evidence."

## SIXTH AFFIRMATIVE DEFENSE

### (No Ratification)

Defendants assert that they did not engage in any unlawful conduct towards Plaintiffs. However, if the Court or trier of fact determines that unlawful conduct by any agent or employee of Defendants occurred, such conduct was neither authorized nor ratified by Defendants.

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-2-

**SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

Defendants allege that the Complaint, or any cause of action alleged therein, fail due to Plaintiffs' failure to timely and/or completely exhaust all administrative remedies as required by law, including those provided by internal administrative processes, external administrative procedures, and other statutory authority under FEHA.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Legitimate Business Reasons)**

Defendants assert if, and to the extent that it made any adverse employment decisions with respect to Plaintiffs, those decisions were reasonable in response to a legitimate business necessity; taken in good faith and based upon good cause for legitimate business reasons and/or pursuant to the terms of applicable laws and regulations; and fell within the legitimate exercise of managerial discretion, and therefore cannot provide any basis for recovery of the damages claimed in Plaintiffs' Complaint.

**NINTH AFFIRMATIVE DEFENSE**

**(Same Decision)**

Defendants allege that Plaintiffs' Complaint, and each purported cause of action set forth therein, fails because Defendants would have made the same decision to terminate or constructively discharge Plaintiffs' employment with or without Plaintiffs' or Defendants' alleged actions for legitimate, independent reasons.

**TENTH AFFIRMATIVE DEFENSE**

**(Business Necessity/Job Relatedness)**

Defendants allege that its employment practices are lawful because it is necessary for its business to operate safely and sufficiently, and the employment practice substantially accomplishes that business purpose.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Mixed Motive)**

Defendants allege that even if Plaintiffs produce sufficient evidence to show that

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-3-

DEFENDANTS' ANSWER TO COMPLAINT

retaliation was a substantial motivating factor in Defendants' personnel decision(s), which Defendants contends Plaintiffs cannot do, Defendants would have the same decision(s) with respect to Plaintiffs' employment solely for legitimate, non-discriminatory, non-retaliatory reasons. Consequently, Defendants reserve the right to allege that Plaintiffs' claims and damages are barred by the mixed motives and analysis/defense.

**RESERVATION OF RIGHTS**

Defendants reserve the right to allege other affirmative defenses as they may arise during the course of discovery.

WHEREFORE, Defendants pray for judgment as follows:

1.    That this action be dismissed in its entirety, with prejudice.

2.    That judgment be entered in favor of Defendants and against Plaintiffs.

3.    That Defendants be awarded the costs of suit and attorneys' fees incurred herein.

4.    For such and other further relief as this Court may deem just and proper.

Dated: May 5, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By: _____
Mark S. Posard
Jennifer M. Holly
Heather T. Daiza
Attorneys for Defendants
NATIONAL EWP, INC.,
SIMON JOHNSON, and KEVIN SIMPSON

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

-4-

**DEFENDANTS' ANSWER TO COMPLAINT**

In Re: *Martinez, et al. v. National EWP, Inc., et al.*
Imperial Superior Court Case Number ECU002809

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On the date below, I served the within documents:

**DEFENDANTS' ANSWER TO COMPLAINT**

☒ **Only by Electronic Transmission**: In compliance with California Rule of Court, Emergency Rule 12 Related to COVID-19 we will only by e-mailing the document(s) to the persons at the e-mail address(es) listed.

Jonathan P. LaCour, Esq.
Lisa Noveck, Esq.
Jameson Evans, Esq.
Amanda M. Thompson, Esq.
EMPLOYEES FIRST LABOR LAW P.C.
1 S. Fair Oaks Avenue, Suite 200
Pasadena, California 91105

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 5, 2023 at Castro Valley, California.

_____
Danielle Brodit-Terry

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

-5-
**DEFENDANTS' ANSWER TO COMPLAINT**